UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

––––––

| | | |
|---|---|---|
| ALAN EUGENE RHEA, # 190791, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:06-cv-41 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| KURT JONES, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |
| _____ | ) | |

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254. Following his conviction in a jury trial, petitioner was sentenced by the Macomb County Circuit Court on July 6, 2001, to a term of 20-to-40 years' imprisonment for first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), and a concurrent term of 2-to-4 years for felonious assault, MICH. COMP. LAWS § 750.82. The sentences were enhanced by petitioner's status as an habitual offender, fourth felony offense, under MICH. COMP. LAWS § 769.12. Petitioner's conviction and sentence were upheld on direct review, and the state courts denied petitioner's *pro se* application for post-conviction relief. This habeas corpus action followed.

The *pro se* habeas corpus petition raises eleven grounds for relief. In summary, petitioner asserts the following:

(1) the evidence was insufficient to support petitioner's convictions for first-degree home invasion and felonious assault; (2) the trial court erred by permitting the prosecution to amend the information to change the date and location of the offense;

(3) the trial court abused its discretion by denying petitioner's motion for a directed verdict; (4) the trial court violated petitioner's due process rights by sentencing him based upon improper considerations not reflected in the sentencing transcript; (5) petitioner's due-process rights were violated when:  (a) the trial court failed to identify the four previous felony convictions supporting his sentence as a habitual offender; (b) the conviction dates for two of the previous offenses listed in the notice of habitual offender information were incorrect, and (c) the charging statutes were incorrect in the habitual offender information; (6) petitioner was denied a fair trial when the prosecutor introduced hearsay testimony; (7) the trial court erred in admitting hearsay testimony in violation of the Confrontation Clause; (8) defense counsel was ineffective when he failed to object to the improper hearsay testimony; (9) appellate counsel was ineffective when he failed to raise on direct appeal the issues presented by petitioner in his motion for relief from judgment; (10) petitioner's due process rights were violated when the trial court "failed to indicate on the record as to which charge the jury was being polled;" and (11) petitioner is entitled to re-sentencing because the trial court considered previous uncounseled convictions and other improper considerations in imposing sentence.

(Petition, ¶ 14 and attachments).  Respondent has filed an answer to the petition, supported by the state-court record.  The answer challenges each ground on its merits, but also asserts that several of petitioner's claims are barred by the doctrine of procedural default, either because petitioner did not object in the trial court or because he did not raise the issue on direct appeal.  Upon review of the

record, I conclude that petitioner has not established grounds for habeas corpus relief and recommend that the petition be denied.

**Proposed Findings of Fact**

**A.     Trial Court Proceedings**

The state-court prosecution arose from an incident that occurred on October 25, 2000, at approximately 8:00 p.m., in Eastpointe, Michigan.  David Fournier was returning his mother, Eileen Fournier, to her home at 23136 Rausch in Eastpointe, Michigan.  The home was a small bungalow, with two entry doors, one at the front and one on the side.  Mr. Fournier left his mother at the side door while he parked the car. When he returned to the house through the side door, he heard Mrs. Fournier yell, "What are you doing in my house?"  Mr. Fournier noticed that the kitchen and the dining room were ransacked.  Mr. Fournier then went to the front door, where he saw petitioner running away from the house towards the corner.  Mr. Fournier began to pursue petitioner, but stopped when petitioner made a slashing motion towards him with an object that appeared to be a knife, but turned out to be a screwdriver.  Petitioner kept saying, "I didn't take anything," but Fournier saw him get a white bag out of his pocket and throw it into a yard.  Fournier continued pursuing petitioner and was eventually aided by a bystander in apprehending him.  The two men held petitioner until the police arrived.  Police retrieved the bag that petitioner discarded, which was filled with bullets, later identified by Mr. Fournier as belonging to a gun that his father had owned.  Fournier testified that after the incident, he found an open box of bullets in the house.  Although the crime occurred at 23136 Rausch, petitioner was apprehended by Fournier at 23123 Tuscany Street, about four blocks away.

Petitioner was charged in the Macomb County Circuit Court in a two-count felony Information with first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), and assault with a dangerous weapon, MICH. COMP. LAWS § 750.82. The Information further charged that petitioner had three prior felony convictions, thus subjecting him upon conviction to a possible life sentence as a fourth-felony offender under the Habitual Offender Law, MICH. COMP. LAWS § 769.12. The felony Information charged that the offenses took place on October 26, 2000, at 23123 Tuscany in the City of Eastpointe, Michigan. As noted above, the alleged home invasion occurred at 23136 Rausch, about four blocks away from the Tuscany address, where petitioner was apprehended. Furthermore, the crime occurred on October 25, not October 26, 2000.

Petitioner and defense counsel appeared for trial on May 31, 2001, Honorable Pat M. D'Onofrio presiding. At the outset of the proceedings, defense counsel asked for permission to place on the record a plea agreement proposed by the prosecutor, but rejected by petitioner, pursuant to which the prosecutor would agree to a sentencing cap of 66 months. (TT I, 3-6). Petitioner confirmed that he did not wish to plead guilty. (TT I, 6). The prosecutor then moved to amend count 1, the home invasion charge, to reflect that the crime took place at 23136 Raush Avenue, rather than at 23123 Tuscany Street, as alleged in the Information. The court confirmed with defense counsel that petitioner's defense was that he did not commit the crime, in which case the precise address was not material. The court asked defense counsel whether the "precise identifying address" was germane to the defense, to which defense counsel answered, "No, judge, it isn't. The defense in this case is that he is not guilty because he did not do this particular offense." (TT I, 6-8). On that basis, the court determined that defendant would not be prejudiced by the amendment. (TT I, 8). After some discussion concerning the number of peremptory challenges that each party would be

-4-

allowed, the prosecutor made a second motion to amend the Information, this time to correct the date of the offenses. (TT I, 12-13). Defense counsel objected on the basis of timeliness, but the court allowed the Information to be amended to correct the date from October 26 to October 25, 2000. (TT I, 14). The court and counsel then selected a jury.

The prosecution called only one witness: David Fournier. (Ilene Fournier had died before the time of trial.) Petitioner called three investigating officers.

On direct examination, David Fournier testified to the facts set forth in the first paragraph of the Proposed Findings of Fact above concerning his pursuit and apprehension of petitioner. He also testified concerning petitioner's slashing at him with an object that at first appeared to be a knife but then was recognized as a screwdriver. He testified that during the pursuit, petitioner twice said, "I didn't take anything." (TT II, 54-73). On cross-examination, defense counsel confronted Fournier with the fact that his written statements to police on the evening of the event did not include reference to petitioner's incriminating statements that he "didn't take anything." (TT II, 77-79). Counsel also elicited from Fournier the fact that he had never seen petitioner within the confines of his mother's home and had never observed him take anything from the residence. (TT II, 80-81). Fournier also testified that he did not see evidence technicians dusting for fingerprints inside the house after the crime. (TT II, 84). Counsel established that Fournier had not seen the bullets allegedly taken from his mother's home for over ten years and could only say that the bullets discarded by petitioner were similar to those in his mother's house. (TT II, 85-86).

After Fournier testified, but before the prosecution rested, defense counsel made a motion for directed verdict on both counts, alleging insufficiency of evidence. After hearing from

both attorneys, the court made oral findings on each count, finding the evidence to be sufficient to allow a reasonable trier of fact to find petitioner guilty. (TT II, 97-105).

The first defense witness was Detective Leon Allen Burdy, of the Eastpointe Police Department. Detective Burdy was in charge of the investigation of the present case and visited the crime scene on the night of the event. He testified that there was no evidence of forced entry. (TT II, 117). He conceded that officers did not dust for fingerprints on the side door, which was the presumed point of entry by the burglar. (TT II, 118-19). Although the entire upstairs of the house was ransacked, officers did not dust for prints there either. (TT II, 119-20). Burdy conceded that there was no fingerprinting done within the home at any time. (TT II, 121). He further conceded that no physical evidence established that petitioner had been in the house. (TT II, 122). He also conceded that the report of Officer O'Connor did not contain any indication that petitioner said to Fournier, "I didn't take anything." (TT II, 125-26). On cross-examination, Detective Burdy testified that he did not dust for fingerprints because a suspect was already in custody. (TT II, 129).

The defense next called Officer Stefan Sommerfeld, who participated in the investigation of the crime. The point of this examination was to emphasize discrepancies between Fournier's testimony and his statements to police. (TT II, 130-36). Defendant called Officer Patrick Connor of the Eastpointe Police Department, who testified that David Fournier never told police that he overheard petitioner state during a foot pursuit, "I didn't take anything." (TT II, 138-41).

Defense counsel then asked for a session outside the presence of the jury. During this time, counsel informed the court that he had made the strategic decision not to call either Officer Hardy or Officer Massey. Petitioner confirmed under oath that he agreed with counsel's strategic decision. (TT II, 141-42). The court then questioned petitioner to determine whether he wished to

-6-

testify.  Counsel questioned petitioner, explaining to him his constitutional right to testify as well as his right against self-incrimination.  Petitioner asserted that he did not wish to testify in his own defense and that he was "positive" about that.  (*Id.*, 143-45).

On the next day, outside the presence of the jury, the court discussed certain jury instruction issues with counsel.  (TT III, 3-4).  In that context, petitioner confirmed on the record that he agreed with counsel's strategic decision not to ask for a jury instruction on any lesser included offenses.  In the words of defense counsel, petitioner decided to "go for broke," asking for a verdict of guilty or not guilty.  (*Id.*, 4-5).  The assistant prosecutor then delivered his final argument, asking the jury to find petitioner guilty of both home invasion in the first-degree and assault with a dangerous weapon.  (*Id.*, 5-20).  Defense counsel delivered his final argument, asserting that the proofs are "almost nonexistent" with regard to his client's guilt.  He emphasized the lack of fingerprints or other forensic evidence tying his client to the crime.  He also pointed out inconsistencies in the testimony of David Fournier and variations between that testimony and statements that Fournier had given to police.  (*Id.*, 20-35).  The prosecutor delivered a short rebuttal.

After further discussion with counsel outside the presence of the jury, the court delivered final instructions on both the breaking-and-entering charge and the assault charge.  (TT III, 48-66).  The jury was excused, and both parties pronounced themselves satisfied with the instructions as given.  (*Id.*, 67).  The jury deliberated for three hours and returned a signed verdict form finding petitioner guilty of home invasion in the first-degree and guilty of assault with a dangerous weapon.  The court instructed that the clerk poll the jury.  Each juror was addressed separately and expressed agreement with the verdict.  (*Id.*, 69-71).

The parties appeared before the court on July 9, 2001, for sentencing. (*See* Sentencing Transcript (ST), docket # 21). The sentencing in this case was consolidated with the sentencing in case no. 01-1413-FH, in which petitioner had entered a plea of guilty to home invasion, second-degree, arising from a different incident. The court first heard objections to the factual statements made in the presentence report. Defense counsel objected to the statement that petitioner had seven previous felony convictions. "My client indicates that's incorrect. There should be 5." All parties agreed that petitioner had only five previous felony convictions, and the court amended the report accordingly. (ST, 5-6). The parties agreed that the minimum sentencing range under state guidelines for the second-degree home invasion conviction was 29-to-57 months. Petitioner stated that he had no other objections to the presentence report in that case. (ST, 6-7). The court heard allocution on that conviction, during which defense counsel blamed petitioner's conduct on a heroin addiction and emphasized that petitioner was a productive citizen for many years before becoming addicted. Petitioner addressed the court, stating that he had been struggling with drugs since he was fifteen years old and apologizing to the victim of the offense. (*Id.*, 7-8). The court then imposed a sentence of 48-to-180 months, commenting that petitioner was a danger to the community and had decided to "terrorize" old people rather than seek treatment for his addiction. (*Id.*, 8-9).

The court then turned to sentencing in the instant case. Defense counsel agreed that the court's amendments to the presentence report in the consolidated case cured any problem in this case and that there were no other corrections or additions. Counsel indicated that he had no desire to "reallocute" on behalf of his client. (ST, 12). On its own motion, the court directed that the prior record variable under the state guidelines be reduced from 10 to 5. The court also directed reduction of another offense variable on its own motion. This had the effect of reducing the minimum

guideline range to 72-to-240 months, rather than 78- to-260 months.  (*Id.*, 13-15).  Petitioner then addressed the court, objecting to the court's previous comment that he was "preying on old people."  Petitioner said, "This is a random crime."  He explained that he was in a methadone clinic at the time trying to get treatment, but that it did not come in time.  The court asked defense counsel whether the crimes listed on the habitual offender notice were "appropriately set forth."  Defense counsel indicated that the listing was correct, and petitioner personally acknowledged this fact.  (ST, 16-19).  The court then made findings relative to sentencing.  The court noted a 1982 conviction for attempted burglary, a 1984 conviction for attempted breaking-and-entering, a 1987 conviction for burglary, a 1991 robbery conviction, a conviction for fraudulent activities in 1993, and a retail fraud conviction.  These were followed by the two home invasions for which petitioner was then being sentenced.  Again emphasizing petitioner's danger to the community arising from the "streak of alleged B&E's in the community," the court imposed a sentence of 240-to-480 months on the burglary conviction and a sentence of 24-to-48 months on the assault conviction, giving petitioner credit for time served on both.

Petitioner immediately protested his sentence, stating, "I can't believe you are doing this. . . . Why are you doing this to me?"  The court emphasized that petitioner had committed seven felonies and was a danger to the community.  Petitioner responded, "No, I'm a drug addict is all.  I ain't, I never hurt nobody."  Petitioner stated that he was not a danger to the community and that he did not deserve to "die in prison for what happened."  "This is b___s___, man.  You know, you are going to get what is coming to you at the end."  Petitioner continued to argue with the court, accusing the court of having coerced him into a guilty plea.  (ST, 20-24).  The court persisted in its sentence.

**B.      Appellate Proceedings**

Petitioner, represented by new appellate counsel, appealed as of right to the Michigan Court of Appeals.  Counsel's appellate brief raised four issues for review:

I.       The evidence was insufficient to support petitioner's conviction for either home invasion or felonious assault.

II.      The sentence of 20-to-40 years for first-degree home invasion, fourth felony offender, was disproportionate and an abuse of discretion, even though it fell within the state guidelines.

III.     The court deprived petitioner of due process by allowing amendment of the Information to change the date and location of the offense.

(Defendant-Appellant's Brief on Appeal at v, found in Michigan Court of Appeals record, docket # 22).  Petitioner filed a *pro se* brief in the Court of Appeals raising seven claims of error:

I.       The failure to identify each charge during the jury poll was plain error requiring reversal.

II.      The trial court abused its discretion in denying petitioner's motion for directed verdict, because the evidence was only circumstantial.

III.     The sentence was based upon "improper considerations not reflected on the record."

IV.      Petitioner's sentencing as a fourth habitual offender was improper, because the court failed to indicate on the record which prior convictions it was relying on and because the Indictment listed improper dates and improper charging statutes.

-10-

V.     Petitioner should be resentenced because the sentencing court relied on prior uncounseled convictions and upon improper considerations.

VI.     Trial counsel was ineffective at sentencing for failure to object to allegedly inaccurate information.

(Defendant-Appellant's Supplemental Brief on Appeal at ii, found in docket # 22).

By unpublished, *per curiam* opinion dated March 20, 2003, a panel of the Michigan Court of Appeals rejected all appellate issues and confirmed petitioner's conviction and sentence. Applying the standard of *Jackson v. Virginia*, as adopted by the Michigan Supreme Court in *People v. Hampton*, 285 N.W.2d 284, 288 (Mich. 1979), the panel found the direct and circumstantial evidence to be sufficient to prove that petitioner had entered the house and that Mrs. Fournier was present when he was there, thus satisfying the elements for first-degree home invasion. (Op., 2). The court also found that petitioner's slashing at Mr. Fournier with a screwdriver was sufficient to constitute assault with a deadly weapon and that petitioner's intent to put Mr. Fournier in fear of an immediate battery could be inferred by a reasonable trier of fact in the circumstances of the case. (Op., 3). The appellate court found that application of state proportionality principles to the sentence was not warranted, because the trial court had not departed from the state sentencing guidelines. (Op., 3-4). The court rejected counsel's due-process challenge to amendment of the Information, finding that petitioner was not "prejudiced or unfairly surprised by the prosecution's amendments." (Op., 4).

Turning to the issues raised in petitioner's *pro se* brief, the court found that the challenge to the method of polling the jury was waived for failure to object at trial, thus limiting review to plain error. The court rejected the claim of plain error, finding that under state law there

-11-

is "no requirement that a jury be polled to return a valid verdict." (Op., 4). The court rejected petitioner's contention that the sentencing judge relied on personal feelings of antipathy, finding that the court's personal feelings did not affect the sentencing decision, which was driven by the trial court's finding that petitioner was a danger to society. (Op., 5). Although recognizing that a sentencing court's reliance on uncounseled prior convictions violates federal rights, the Court of Appeals found that petitioner failed to carry his initial burden of proof to establish that any of his prior convictions was obtained in violation of his right to counsel. (Op., 5 (citing *United States v. Tucker*, 404 U.S. 443 (1972)). The court further found no violation of petitioner's due-process right to be sentenced on the basis of accurate information, finding that the issue was "unpreserved on appeal" by petitioner's failure to object in the trial court and that any errors in the trial court's description of petitioner's criminal history were "insignificant." (Op., 6). Similarly, the appellate court found that any challenge to the trial court's sentencing petitioner as an habitual offender was waived by petitioner's affirmative statements at sentencing confirming the accuracy of the list of previous convictions. "We note that defendant admits to having at least five prior felonies. This is clearly more than the three felonies required to invoke enhanced sentencing pursuant to MCL 769.12." (Op., 6-7). Finally, the court rejected petitioner's assertion of ineffective assistance of counsel at sentencing, again finding any error to be unpreserved and determining that petitioner's own statements at sentencing, which admitted the accuracy of the habitual offender notice, waived any possible error. (Op., 7).

Petitioner filed a *pro se* application for leave to appeal to the Michigan Supreme Court. The application raised all issues asserted in the state Court of Appeals by either petitioner

or his counsel.  By standard order entered August 29, 2003, the state Supreme Court denied

discretionary review.  (*See* Michigan Supreme Court record, docket # 23).

On January 15, 2004, petitioner filed a *pro se* motion for relief from judgment

pursuant to Rule 6.500 of the Michigan Court Rules, raising the following four claims:

I.      Admission of the statement of Mrs. Fournier violated petitioner's

rights under the Confrontation Clause.

II.     Petitioner was denied a fair trial by the introduction of the false

testimony of David Fournier.

III.    Trial counsel was constitutionally ineffective for failing to object to

the admission of Mrs. Fournier's hearsay statement and for failing to determine why

she never gave a statement to police.

IV.     Appellate counsel was constitutionally ineffective for failing to raise

the foregoing issues on appeal.

By order entered April 5, 2004, the trial court denied the motion for relief from judgment.  Petitioner

filed a *pro se* application for leave to appeal to the Michigan Court of Appeals.  On December 16,

2004, the appellate court denied the application "for failure to meet the burden of establishing

entitlement to relief under MCR 6.508(D)."  Petitioner moved for reconsideration, which the Court

of Appeals denied by order entered February 17, 2005.  (*See* Michigan Court of Appeals record,

docket # 24).  Petitioner raised the same issues in the state Supreme Court.  By order entered May

31, 2005, the court denied leave to appeal, finding that petitioner had "failed to meet the burden of

establishing entitlement to relief under MCR 6.508(D)."  (Michigan Supreme Court record, docket

# 25).

On January 17, 2006, petitioner filed the present habeas corpus action. His *pro se* petition raises eleven grounds for relief, some of which include subparts.

## Applicable Standards

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 791 (2001), *cert. denied, Texas v. Penry*, 126 S. Ct. 2862 (June 12, 2006). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. This Court also may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 381 ("If this court has not broken sufficient legal ground to establish an asked for constitutional principle, the lower federal courts cannot themselves establish a principle

-14-

with sufficient clarity to satisfy the AEDPA bar."); *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *see Spisiak v. Mitchell*, 465 F.3d 684, 690 (6th Cir. 2006).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410. Objective reasonableness is "a substantially higher threshold." *Schriro v. Landrigan*, 127 S. Ct. 1933, 1939 (2007).

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law,

unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented.  *See Harris*, 212 F.3d at 943; *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003).  Where the circumstances suggest that the state court actually considered the issue, the review is not *de novo*.  *Onifer*, 255 F.3d at 316.  The review remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.  *Harris*, 212 F.3d at 943.  However, the Sixth Circuit recently has clarified that where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer."  In such circumstances, the court conducts *de novo* review.  *McKenzie*, 326 F.3d at 727 (limiting *Harris* to those circumstances in which a result exists to which the federal court may defer); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Nields v. Bradshaw*, 482 F.3d 442, 449-50 (6th Cir. 2007); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

The AEDPA requires heightened respect for state factual findings.  *See Sinkfield v. Brigano*, 487 F.3d 1013, 1016 (6th Cir.), *cert. denied*, 2007 WL 2383431 (2007); *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1);  *Haliym v. Mitchell*, 492 F.3d 680, 690 (6th Cir. 2007); *Benge v. Johnson*, 474 F.3d 236, 241 (6th Cir. 2007).  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

**Discussion**

Petitioner or his appointed counsel raised nine claims on direct appeal.  Of these nine claims, the state Court of Appeals reviewed five on their merits, finding that they were properly preserved for appellate review.  The remainder were deemed unpreserved, as were the claims raised for the first time on motion for post-conviction relief.  This report and recommendation, in section I, will analyze the five claims properly preserved for appellate review and therefore reviewable in a habeas corpus proceeding on their merits.  In section II below, the report and recommendation will analyze those claims deemed procedurally defaulted in the state courts.

I.       **Claims Reviewable on Their Merits**

A.       Sufficiency of the Evidence to Support Conviction for First-Degree Home Invasion and for Felonious Assault.

Ground 1 of the habeas corpus petition challenges the sufficiency of the evidence to support petitioner's conviction for first-degree home invasion and for felonious assault.[1]  Petitioner asserts that his conviction for home invasion is based solely on the testimony of David Fournier, who did not even see petitioner in the house, and that no physical evidence ties petitioner to the crime.  With regard to the assault conviction, petitioner argues that there was no evidence of specific intent to injure David Fournier or to put him in reasonable fear of an immediate battery.

The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove each element of an offense beyond a reasonable doubt.  *Victor v. Nebraska*, 511 U.S. 1, 5 (1994); *In re Winship*, 397 U.S. 358, 364 (1970).  In a section 2254 challenge to the sufficiency of

---

[1] Ground 3 raises the same claim, asserting that the trial court abused its discretion in denying a motion for directed verdict.  Both claims are governed by the same constitutional test.

evidence supporting a state criminal conviction, the question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence in a light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In applying this standard, the federal court is bound by the substantive elements of the criminal offense as defined by state law. *Id.* at 324 n.16; *see Parker v. Renico*, No. 06-2419, ___ F.3d ___, 2007 WL 3010436, at * 3 (6th Cir. Oct. 17, 2007); *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006). Furthermore, a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 126 S. Ct. 602, 604-05 (2005).

Petitioner's counsel challenged the sufficiency of the evidence in his brief submitted on direct appeal, and the Michigan Court of Appeals analyzed and rejected this claim on the merits. (Op., 2-3). Review of this issue must therefore be conducted under the AEDPA standard, which the Sixth Circuit has recently described as "very deferential." *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007). Review of challenges to the sufficiency of the evidence under this standard proceeds under the "unreasonable application" prong of the AEDPA statute. *See Thompson v. Bock*, 215 F. App'x 431, 435 (6th Cir. 2007). In other words, such an argument is properly understood as an allegation that the state court's decision resulted in an unreasonable application of *Jackson v. Virginia*. *See Riley v. Berghuis*, 481 F.3d 315, 320-21 (6th Cir. 2007); *Biros v. Bagley*, 422 F.3d 379, 392 (6th Cir.), *cert. denied*, 127 S. Ct. 125 (2006). Review in such cases "is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor." *Thompson*, 215 F. App'x at 436. This standard presents a "very difficult hurdle" for the habeas petitioner. *Id.* at 437. All inferences and credibility determinations

-18-

must be drawn in favor of the prosecution, and the conviction may be supported wholly or in part by circumstantial evidence. *Id.*

Petitioner was convicted of first-degree home invasion. The elements of home invasion are (1) breaking and entering (2) a dwelling (3) with intent to commit a felony, larceny or assault in the dwelling. The offense is punishable as a first-degree home invasion if, at the time the defendant was present in the dwelling, he was either armed with a dangerous weapon or another person was lawfully present in the dwelling. MICH. COMP. LAWS § 750.110a(2); *see Johnson v. Warren*, 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004) (Michigan first-degree home invasion statute includes all the elements of burglary of a dwelling, but also requires that the defendant be armed with a dangerous weapon or that the dwelling be occupied). Under Michigan law, the element of breaking is satisfied by any amount of force used to open a door or window to enter a building, no matter how slight. *See People v. Toole*, 576 N.W.2d 441, 443 (Mich. Ct. App. 1998). Consequently, even if a defendant pushes aside an already open door, the element of breaking is satisfied. *See People v. Hill*, 193 N.W.2d 909, 911 n.1 (Mich. Ct. App. 1971). When reviewing the sufficiency of the evidence, the Michigan Court of Appeals noted that the record supported a conclusion that the front door was closed but not locked. The court found that the jury could have reasonably inferred that petitioner was inside the house from Mrs. Fournier's statement, "What are you doing in my house?" The court also noted that petitioner was the only person seen running from the home and that Mr. Fournier observed petitioner discard a white bag, later found to contain stolen bullets, as he fled. Further, as Mr. Fournier pursued petitioner, petitioner kept saying, "I didn't take anything." On this basis, the Court of Appeals found that the evidence was sufficient for a jury to conclude that petitioner was guilty of first-degree home invasion. (Op., 2).

-19-

In attempting to overturn his conviction, petitioner argues that there was no physical evidence that he was ever inside the dwelling. Physical evidence is not an absolute necessity to establish guilt beyond a reasonable doubt. The evidence clearly showed that *someone* had been inside the house, as two of the rooms were ransacked. Mrs. Fournier's statement was sufficient to support a jury inference that the burglar was inside the house at the time she entered through the side door.[2] Although Mr. Fournier did not see petitioner in the house, he saw him immediately thereafter running from it. This fact clearly supports an inference that petitioner was the person seen by Mrs. Fournier only seconds earlier. Petitioner nevertheless argues that "from the lack of any physical evidence that petitioner had in fact entered the dwelling, the elements for first-degree home invasion were not there." (Petition at 19). Petitioner's insistence on physical evidence, however, is not supported by federal law. The Sixth Circuit Court of Appeals has recently rejected an identical argument:

> Although [the habeas petitioner] argues that Hicks's version of events was not corroborated by other witnesses or by physical evidence, "[a] jury's verdict 'may be based entirely on circumstantial evidence.'" *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002) (quoting *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995)); *see also United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999) ("'Circumstantial evidence alone is sufficient to sustain a conviction. . . .'") (quoting *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986)); *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996) (noting that there is sufficient evidence to support a conviction even if the "circumstantial evidence does not 'remove every reasonable hypothesis except that of guilt'") (quoting *United States v. Clark*, 928 F.2d 733, 736 (6th Cir. 1991) (per curiam)).

*O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007). On the basis of the victim's testimony alone, the Sixth Circuit found that the evidence was sufficient to support the kidnaping conviction in

---

[2] Petitioner seeks to challenge the admission of Mrs. Fournier's statement as hearsay and a violation of his rights under the Confrontation Clause. These claims are analyzed and rejected in section II.A. below.

*O'Hara v. Brigano*.  Likewise, Mr. Fournier's testimony, coupled with the circumstantial evidence adduced by the prosecution, was sufficient to support petitioner's conviction for first-degree home invasion.

Petitioner also challenges the sufficiency of the evidence to support his conviction for felonious assault under Mich. Comp. Laws § 750.82.  That statute makes it a felony for a person to assault another person with a gun, revolver, knife, "or other dangerous weapon."  Under Michigan law, the elements of assault with a dangerous weapon are (1) an assault (2) with a dangerous weapon (3) with the intent to injure or place the victim in reasonable fear or apprehension of an immediate battery.  *People v. Avant*, 597 N.W.2d 864, 869 (Mich. Ct. App. 1999).  The state Court of Appeals has specifically held that a screwdriver, although not designed to be a dangerous weapon, is an object which can be used as a weapon and "when so employed, is dangerous."  *People v. Barkley*, 390 N.W.2d 705, 707 (Mich. Ct. App. 1986).

On direct appeal, petitioner did not contest the conclusion that a screwdriver is a dangerous weapon for purposes of the felonious assault statute.  He argued on appeal, as he argues now, that the evidence did not establish that petitioner intended to put Mr. Fournier in fear of an imminent battery but only intended to cause Mr. Fournier to abandon his pursuit.  On direct appeal, the state appellate court observed that Mr. Fournier's "description of the slashing motions made by defendant while trying to evade capture invites the obvious inference that defendant was attempting to put Mr. Fournier in fear of an immediate battery."  (Op., 3).  The Court of Appeals noted that an actor's intent may be inferred from all the facts and circumstances and, because of the difficulty of proving state of mind, minimal circumstantial evidence is sufficient.  The court therefore found that a reasonable juror could conclude from the evidence that petitioner had the requisite specific intent.

-21-

On habeas corpus review as well, the jury's verdict may be upheld entirely on the basis of circumstantial evidence. *O'Hara*, 499 F.3d at 500. A person facing a fleeing felon who is slashing at him with a screwdriver while yelling, "Stay away from me," would certainly be fearful of an immediate battery, and the assailant's specific intent to create that apprehension is a reasonable inference from those facts. The decision of the state Court of Appeals easily withstands scrutiny under AEDPA and does not represent an unreasonable application of the *Jackson v. Virginia* standard."

Claims 1 and 3 of the petition, challenging the sufficiency of the evidence, must therefore be rejected.

B.      Amendment of the Information

In ground 2 of the habeas corpus petition, petitioner asserts a due-process claim arising from the trial court's grant of leave to amend the petition on the day of trial. The prosecutor was granted leave to correct the date of the offense, as well as the address of the home allegedly entered. As noted in the Proposed Findings of Fact, the original Information had specified the address where petitioner had been apprehended (23123 Tuscany Street) rather than the Fournier home (23136 Rausch). Petitioner asserts that the trial court's grant of leave to amend the criminal Information to change the date and place of the offense violated his right to due process of law.

Indictment by a grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment. *Branzburg v. Hayes*, 408 U.S. 665, 688 n.25 (1972). Consequently, the sufficiency of a state charging Information is generally not a proper subject for habeas corpus review. *Knewel v. Egan*, 268 U.S. 442, 446 (1925). The only requirement imposed upon state charging documents is that they inform an accused of the "nature and cause of

the accusation" as required by the Sixth and Fourteenth Amendments.  That is, the charging document must "give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense."  *Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006) (quoting *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984)).  The offense must be described with enough clarity to inform the accused of the crime of which he stands charged and enable him, as presumptively innocent, to prepare for trial.  *Koontz*, 731 F.2d at 369.  When reviewing amendments to state charging documents in habeas corpus proceedings, the federal courts focus on the questions whether the defendant was surprised by the amendment or otherwise  prejudiced in his ability to defend himself at trial.  *See, e.g., Tague v. Richards*, 3 F.3d 1133, 1141-42 (7th Cir. 1993); *Wright v. Lockhart*, 854 F.2d 309, 312-13 (8th Cir. 1988).

On direct appeal, petitioner's counsel argued that the trial court's action both violated state law and abridged his Sixth and Fourteenth Amendment rights to fair notice of the charge against him.  The Michigan Court of Appeals, however, addressed only the state-law claim, finding no abuse of discretion, prejudice, or unfair surprise.  Because the state Court of Appeals ignored petitioner's due-process claim, while adjudicating a substantially similar state-law claim, this court must perform a "modified" AEDPA review, under which the habeas court carefully reviews the record and applicable law while giving deference to the conclusion reached by the state court.  *See Maldonado v. Wilson*, 416 F.3d 470, 475-76 (6th Cir. 2005).  Under this standard of review, the habeas court is barred from reversing the state conviction unless the state appellate court's decision is contrary to or an unreasonable application of federal law.  *Id.* at 476.

Upon review, I find no abridgement of petitioner's due-process rights.  On the present record, petitioner cannot possibly show any surprise or prejudice arising from the amendments to

the Information.  In response to the prosecutor's motion to amend the home invasion count to reflect that the crime took place at 23136 Rausch Avenue, defense counsel candidly admitted that the precise address of the offense was not germane, because "the defense in this case is that he is not guilty because he did not do this particular offense."  (TT I, 8).  Defense counsel was unable to articulate any reason why the amendment would be prejudicial to petitioner.  Indeed, except for vague allegations of prejudice, petitioner has never been able to articulate any coherent claim of prejudice, either in the state appellate courts or in this court.  It is obvious from the trial transcript that petitioner and his counsel had been given the police reports long before trial, as those reports were the subject of defense counsel's cross-examination.  Those police reports clearly identified the correct scene of the crime.  As the Eighth Circuit has observed, amendments to an Information are permissible so long as the amendment does not alter the degree of the crime charged or unfairly surprise the defendant.  *Wright*, 854 F.2d at 312.  In the absence of a "specific indication of how the amendment prejudiced him unfairly," *id.*, a petitioner does not establish grounds for habeas corpus relief arising from an amended Information.

Petitioner's due-process challenge to the amendment of the criminal Information to change the date of the offense is utterly frivolous.  An amendment changing the date of the offense does not implicate due process in the absence of a showing that the defendant was somehow prejudiced in his ability to meet the charge.  *See Jervis v. Hall*, 622 F.2d 19, 22-23 (1st Cir. 1980); *Sharrar v. Foltz*, 658 F. Supp. 862, 865-67 (E.D. Mich. 1987), *aff'd*, 842 F.2d 333 (6th Cir. 1988). The trial court allowed the Information to be amended to correct the date from October 26 to October 25, 2000.  Defense counsel objected to the amendment, not on the basis of prejudice, but only timeliness.  (TT I, 14).  Petitioner did not assert in the state courts, and cannot assert in this court,

any cogent reason why the amendment prejudiced him.  Petitioner was apprehended minutes after the crime and remained in custody until the time of trial.  The Information could not possibly have confused him concerning the alleged date of the offense in these circumstances.

Under any standard of review, petitioner's claim of a due-process violation arising from amendment of the criminal Information must be rejected.

C.    Sentencing Based on "Improper Considerations Not Reflected in the Sentencing Transcripts"

In ground 4 of the habeas corpus petition, petitioner asserts that the trial judge denied him due process of law by relying on improper considerations in imposing sentence.  In support of this claim, petitioner points to the sentencing judge's comments made during a post-conviction hearing on September 4, 2001, three months after sentencing.  In that transcript, responding to arguments made by appellate counsel, the sentencing judge observed that petitioner had been "difficult" and had an "attitude second to none."

> [THE COURT:]  "Oh sir, you don't know that and I'm telling you he was difficult from the beginning.  He came in with an attitude second to none.  He came in with an attorney who just said 'You are going to be maxed out.'  I will tell you he had an attitude to begin with.  I will tell you that he was very difficult person from the beginning.  And if I'm sorry I used the word 'agreement' instead of 'cap.'
>
> I appreciate your argument, but I want you understand that I'm here like you are there.  And I have to deal with the insanity of human existence day in and day out.  Sentencing Mr. Rhea was difficult because of his attitude; because of his predisposition to sentence coming into this court, were in part I believe imparted by his attorney in an effort to grandstand.  All right.  Notwithstanding, I think you need to know that because that was constantly reflected of his attitude before the court that I was observing as I was sentencing him."

(Petition at 23).  Petitioner argues that these remarks disclosed the trial judge's bias and unfairness to petitioner, who was "respectful, remorseful and apologetic" at sentencing.

-25-

Under the strictures imposed by AEDPA, a habeas court may only grant relief against a state conviction on the basis of the clearly established holdings of the United States Supreme Court. 28 U.S.C. § 2254(d). The Supreme Court has recognized certain constitutional limitations upon state sentencing judges, arising from the Due Process Clause. For example, the Due Process Clause forbids a judge from relying on materially false or unreliable information, *see Williams v. New York*, 337 U.S. 241 (1949), or vindictively inflicting a harsher punishment on the defendant for exercising his constitutional right to trial or privilege against self-incrimination. *See North Carolina v. Pearce*, 395 U.S. 711 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). Beyond these broad constitutional limitations, however, the Supreme Court has not purported to impose strict sentencing rules and regulations upon the state courts. Certainly, the Court has never held that a sentencing judge may not take into account personal impressions of the defendant arising from the court's own observation of defendant's conduct in open court. Indeed, as a general matter, any claim of trial court bias must arise from an extrajudicial source, rather than events occurring in court. *See Liteky v. United States*, 510 U.S. 540, 555 (1994). A judge's reaction to events that occur in open court is disqualifying only in the "rarest circumstances," where the court's comments show such deep-seated favoritism or antagonism that would render fair judgment impossible. *Id.*

On direct review, the state Court of Appeals noted the trial judge's statements concerning petitioner and remarked that those statements indicated that the trial court "may have held defendant in low esteem." (Op., 5). The court found, however, that the judge's personal feelings did not affect the sentencing decision, which was completely justifiable by defendant's danger to society. (*Id.*). On this basis, the appellate court rejected any challenge to the sentence on

the basis of improper considerations.  This holding easily withstands the deferential standard of review applicable under AEDPA.  The transcript in this matter shows that petitioner was indeed a difficult defendant and amply supports the trial judge's comment about petitioner's bad attitude. Petitioner's present assertion that his conduct at sentencing was "respectful, remorseful, and apologetic" is a patent falsehood.  After sentencing, petitioner threatened and cursed at the sentencing judge.  (ST, 21, 25-26).  The judge's comments, made months after sentencing, were accurate and even restrained and in all events do not indicate any deep-seated hostility such that impartial decision-making would have been impaired.  Petitioner's due-process claim arising from allegations of judicial bias must be rejected.

D.     Challenge to Sentencing as an Habitual Offender

Petitioner asserts that his right to due process of law was abridged in connection with the trial court's imposition of sentence under the Habitual Offender Act, MICH. COMP. LAWS § 769.12.  The Habitual Offender Act allows the court to impose enhanced penalties if a defendant has three prior felony convictions.  Additionally, the state sentencing guidelines called for imposition of more severe sentences on habitual offenders.  In ground 5, the habeas corpus petition alleges the existence of "jurisdictional defects" arising from the trial court's failure to indicate on the record at the time of sentencing which prior convictions it was relying on and by mistakes in the criminal Information concerning the dates of previous convictions and the statutes involved.  Ground 11(B) makes a similar claim, alleging that the sentencing court's recitation of petitioner's criminal history was "inaccurate," without specifying any particular error.  On direct review, the Michigan Court of Appeals held that petitioner had waived any error concerning the information contained in his habitual offender notice by answering in the affirmative when the trial court asked him if the crimes

-27-

in the notice were correct.  (Op., 6).  The court also noted that petitioner admitted to having at least

five prior felonies, more than enough to invoke enhanced sentencing procedures under the Habitual

Offender Act.  (Op., 6-7).

   The Due Process Clause prohibits a court from imposing a sentence based on

nonexistent previous convictions.  *See Townsend v. Burke*, 334 U.S. 736 (1948).  This due-process

principle requires that a criminal defendant be given fair notice of the prior convictions upon which

his sentence may be enhanced and an opportunity to challenge their validity.  *See Gayes v. New York*,

332 U.S. 145 (1947); *Tasco v. Butler*, 835 F.2d 1120 (5th Cir. 1988); *Swiatek v. Mancusi*, 446 F.2d

943, 947 (2d Cir. 1971).  Petitioner does not contend that he was deprived of his fundamental right

of notice and an opportunity to be heard on the habitual offender enhancement.  Nor does he assert

that his ability to contest the enhancement was somehow undermined.  Rather, he points to

insignificant errors in the charging document, which obviously did not abridge either his right to fair

notice or an opportunity to be heard on the enhancement.  The Supreme Court has never held that

immaterial mistakes in identifying previous convictions abridges any due-process right of a state

defendant.  Further, the Court has never held that a judge sentencing an habitual offender must

specifically identify the previous convictions relied upon, when the defendant himself admits that

he had more than enough previous convictions to qualify for the enhancement.  Even in this court,

petitioner does not contest the finding that he had at least three previous felony convictions.  He

attaches to his habeas corpus petition a listing of convictions as set forth in the presentence report,

which more than amply demonstrates the existence of three prior felony convictions.  Indeed,

petitioner was previously sentenced as a third habitual offender in both 1991 and 1993.  It is

therefore impossible to conclude that by the year 2001 he somehow did not qualify for sentencing under the habitual offender statute.

Contrary to petitioner's assertions, the United States Supreme Court has never held, or even implied, that the arguments petitioner now advances require a finding that the state courts proceeded on the basis of a "fatal jurisdictional error" in sentencing petitioner as a habitual felony offender. Grounds 5 and 11(B) of the habeas corpus petition are patently meritless.

### E.    Reliance on Prior Uncounseled Convictions

Ground 11(A) of the habeas petition asserts that certain of the convictions relied upon by the sentencing court were uncounseled. The basis of this allegation is the presentence report, in which the presentence writer indicated that, because of the age of some convictions, it was unclear from the record whether petitioner was represented by counsel. On direct review, the state Court of Appeals recognized that reliance on an uncounseled conviction to enhance a criminal defendant's sentence violates federal rights. (Op., 5 (citing *United States v. Tucker*, 404 U.S. 443 (1972)). The court found, however, that petitioner had not carried his burden of proof to establish that any of the prior convictions were obtained in violation of his right to counsel.

Although six years have elapsed since the date of sentencing, petitioner has done nothing to establish that any of his previous felony convictions were uncounseled. While clearly established federal law prohibits the use of uncounseled convictions to enhance punishment, the burden is upon a petitioner to prove the invalidity or unconstitutionality of the prior convictions. *See Hobson v. Robinson*, 27 F. App'x 443, 445 (6th Cir. 2001). This is because a presumption of regularity attaches to final judgments, making it appropriate for the criminal defendant to bear the burden of showing an irregularity in the proceedings. *Id.* (citing *Parke v. Ralley*, 506 U.S. 20, 28-34

-29-

(1992)).  In the *Hobson* case, the Court of Appeals held that by not objecting to the consideration of his previous convictions at the time of sentencing, the habeas petitioner failed to carry his burden of showing the invalidity of those convictions.  The court therefore held that the decision of the Michigan Court of Appeals in rejecting a due-process challenge to petitioner's enhanced sentence was not an unreasonable application of federal law.  *Id.*

In his response to the answer (docket # 28), petitioner asserts that he should not have the burden of establishing that the previous convictions were uncounseled.  He bases this argument on a misunderstanding of habeas corpus proceedings.  He asserts that this habeas corpus action is not a collateral attack on the criminal judgment.  Petitioner is misinformed.  Habeas corpus has always been recognized as a collateral attack on the validity of a state judgment.  *See Amrine v. Tines*, 131 F.2d 827, 833 (10th Cir. 1942); *see also Pratt v. Ventas, Inc.*, 365 F.3d 514, 519 (6th Cir. 2004) (A collateral attack is "a tactic whereby a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court.").  As the Sixth Circuit's decision in *Hobson* shows, the petitioner in a habeas case bears the burden of proving his prior convictions were uncounseled.  This is not likely, as the State of Michigan has provided appointed counsel to indigent criminal defendants since the days of *Gideon v. Wainright*, 372 U.S. 335 (1963), over forty years ago.  In any event, petitioner clearly bears the burden of proof, and he has not met it.

## II.      Procedurally Defaulted Claims

The state appellate courts found that numerous of petitioner's claims had been unpreserved for appeal.  The state courts either refused to review those claims or gave them cursory review under the plain error test.  With regard to all such claims, the Attorney General has invoked the doctrine of procedural default.

-30-

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107, 129 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004); *accord Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003). If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either: (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 126 S. Ct. 2064, 2076 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52.

On direct appeal, the Michigan Court of Appeals expressly relied on Michigan's contemporaneous objection rule in finding that certain of petitioner's appellate claims had not been preserved for appeal. Specifically, on direct review, the Court of Appeals found that the following claims were unpreserved for appellate review: petitioner's challenge to the method of polling the jury (Op., 4); petitioner's claim that he was sentenced on the basis of inaccurate information (Op., 6); and petitioner's claim of ineffective assistance of counsel at sentencing. (Op., 7). It is clear that the contemporaneous objection rule regarding jury instructions was well-established at the time of

petitioner's trial in 2003.  *See, e.g., People v. Kelly*, 378 N.W.2d 365, 369-70 (Mich. 1985); *People v. Curry*, 437 N.W.2d 310, 314 (Mich. Ct. App. 1989); *People v. Kendrick*, 195 N.W.2d 896 (Mich. Ct. App. 1972).  This contemporaneous objection rule serves as an important state interest in ensuring that counsel does his or her part in preventing trial courts from providing juries with erroneous instructions.  *See Osborne v. Ohio*, 495 U.S. 103, 123 (1990) (holding that counsel's failure to urge the trial court to instruct the jury on *scienter* constituted an adequate state law ground to prevent reaching the federal claim).  Further, even though the Michigan Court of Appeals considered whether plain error occurred, petitioner's failure to object is still considered a procedural default.  *See Cooey v. Coyle*, 289 F.3d 882, 897 (6th Cir. 2002); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000); *accord Keith v. Mitchell*, 455 F.3d 662, 674 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 1881 (2007); *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998) (state court's alternative holding on the merits does not require federal court to disregard the procedural bar); *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991) (same); *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989) (claim is defaulted even where the state court may excuse the default for "manifest injustice"); *Federico v. Yukins*, No. 93-2424, 1994 WL 601408, at * 3-4 (6th Cir. Nov. 2, 1994) (same, for "miscarriage of justice").

When petitioner raised other challenges to his conviction in his motion for post-conviction relief under Michigan Court Rule 6.500, both the Michigan Court of Appeals and the Michigan Supreme Court denied relief for petitioner's failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  For purposes of procedural default, the court is concerned with the last "explained" state court judgment.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991).  Here, the Michigan appellate courts expressly stated that they denied petitioner's

-32-

application for leave to appeal on the basis that petitioner failed to meet the burden of establishing entitlement to relief under Mich Ct. R. 6.508(D).[3]  "It is well established in this circuit that the procedural bar set forth in Rule 6.508(D) constitutes an adequate and independent ground on which the Michigan Supreme Court may rely in foreclosing review of federal claims."  *Howard*, 405 F.3d at 477; *Munson v. Kapture*, 384 F.3d 310, 315 (6th Cir. 2004); *see also Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000); *Bradley v. Birkett*, 192 F. App'x 468, 472 (6th Cir. 2006).  In a case such as this, where the Michigan Court of Appeals and Michigan Supreme Court relied upon Michigan Court Rule 6.508(D) in denying leave to appeal, it is sufficiently clear that the state supreme court intended to invoke a procedural bar.  *See Munson*, 384 F.3d at 314; *Abela v. Martin (Abela II)*, 380 F.3d 915, 922-23 (6th Cir. Aug. 27, 2004); *see also Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004); *Burroughs*, 282 F.3d at 414; *Simpson*, 238 F.3d at 407; *accord McCray v. Metrish*, 232 F. App'x 469, 478 (6th Cir. 2007).  Accordingly, the following habeas corpus claims, which were raised for the first time in petitioner's post-conviction motion, are subject to procedural default analysis:  Confrontation Clause claim arising from the admission of the statement of Mrs. Fournier; trial counsel's ineffectiveness for failure to object to the admission of Mrs. Fournier's hearsay statement; and appellate counsel's ineffectiveness for failing to raise the foregoing issues on appeal.  This report and recommendation considers each of the defaulted issues in turn.

---

[3] Under Michigan Court Rule 6.508(D)(2) and (3), a defendant may not collaterally attack a conviction based upon claims that were decided against him in a prior appeal or that could have been raised on direct appeal.  For claims that could have been raised, the defendant is entitled to relief only if he can establish "good cause" for failing to raise the grounds on appeal and "actual prejudice," as shown by a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand."  Mich. Ct. R. 6.508(D)(3)(a)-(b).

-33-

A.    <u>Confrontation Clause Violation</u>

Petitioner asserted in his post-conviction motion that the trial court erred by admitting Eileen Fournier's statements, "What are you doing in my house?" and "He went out the front door." The state appellate courts found this claim to be procedurally defaulted under Mich. Ct. R. 6.508 (D). Petitioner now asserts a hearsay claim in ground 6 and a Confrontation Clause claim in ground 7 of his petition.

In ground 6, petitioner challenges the admission of Mrs. Fournier's statement as hearsay. A federal habeas court may only grant relief if a defendant is in custody in violation of the federal Constitution or laws. 28 U.S.C. § 2254(a). Questions concerning the admissibility of evidence are governed by state law and do not raise a federal constitutional issue. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Harris v. Booker*, No. 06-1321, 2007 WL 2981126, at * 3 (6th Cir. Oct. 11, 2007); *Bey v. Bagley*, No. 04-4289, ___ F.3d ___, 2007 WL 2768300, at * 4 (6th Cir. Sept. 25, 2007); *Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007). Therefore, the admissibility of the statements under the hearsay rules is not reviewable in a habeas corpus proceeding. *See Johnson v. Karnes*, 198 F.3d 589, 593 n.3 (6th Cir. 1999); *see also Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003).

Ground 7 asserts a claim under the Confrontation Clause. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court formulated a new rule of Confrontation Clause jurisprudence with regard to testimonial evidence. The Court later held, however, that the rule of *Crawford* was not applicable retroactively to criminal judgments that became final before *Crawford* was announced. *See Whorton v. Bockting*, 127 S. Ct. 1173, 1177 (2007); *accord Vasquez v. Jones*, 496 F.3d 564, 568 n.1 (6th Cir. 2007). The criminal judgment in the present case became final on

-34-

August 29, 2003, when the Michigan Supreme Court denied discretionary review. (*See* docket # 23). *Crawford* was not decided until March 8, 2004. Consequently, in adjudicating petitioner's Confrontation Clause challenge, this court is to apply the law as it stood before *Crawford* was announced. *See Dorchy v. Jones*, 398 F.3d 783, 788 (6th Cir. 2005). Petitioner's Confrontation Clause claim must therefore be analyzed under the rule of *Ohio v. Roberts*, 448 U.S. 56 (1980), and its progeny. *See Dorchy*, 398 F.3d at 788.

As noted above, petitioner did not raise a Confrontation Clause claim on direct appeal, and the state appellate courts found the issue to be defaulted when petitioner attempted to raise it on collateral attack. Therefore, petitioner is required to establish cause for his failure to raise the issue on direct appeal and actual prejudice. *See Wainwright v. Sykes*, 433 U.S. 72 (1977). Petitioner has not attempted to show either. In his response to the answer (docket # 28), petitioner ignores the question of procedural default, although the defense was clearly raised by respondent. On the present record, therefore, there is no basis to find that petitioner's failure to raise the Confrontation Clause issue on direct appeal is excused by a showing of good cause.

Nor has petitioner shown prejudice. Under the law as it stood before *Crawford v. Washington*, the admission of hearsay did not violate the Confrontation Clause where the "proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule." *White v. Illinois*, 502 U.S. 346, 356 (1992). The *White* Court held that admission of a spontaneous declaration did not violate the Confrontation Clause, noting that the exception for spontaneous declaration "is at least two centuries old." *Id.* at 355 n.8. A decade before that, the Sixth Circuit had held that properly admitted spontaneous declarations (also known as excited utterances) do not violate the Confrontation Clause, because the hearsay exception was "firmly

rooted." *Heggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1057 (6th Cir. 1983); *see also United States v. Handley*, 431 F.3d 484, 496-98 (6th Cir. 2005) (Confrontation Clause not violated by admission of hearsay statements from 911 call under excited utterance exception).

Petitioner objects to this conclusion, on the ground that the prosecution failed to establish a proper foundation for the admission of Mrs. Fournier's statements as excited utterances. Petitioner's argument suffers from two fatal flaws.  First, the adequacy of the foundation for the admission of evidence is governed by the state evidence rules, not the federal Constitution.  Second, even if the question were reviewable in habeas corpus, petitioner's argument is unavailing.  The question whether an adequate foundation has been laid for the admission of testimony is for the judge to decide, not the jury.  MICH. R. EVID. 104(a); *see People v. Smith*, 581 N.W.2d 654, 657 (Mich. 1998); *People v. Burton*, 445 N.W.2d 133, 144-45 (Mich. 1989) (The trial court must determine whether the event was exciting enough to cause the declarant to speak spontaneously and whether the statement was uttered soon enough after the event to be truly spontaneous.).  The testimony of David Fournier easily supplied the required foundation for the admission of the excited utterance.  Seeing an intruder in one's home would certainly constitute an event exciting enough to elicit a startled response, and Mrs. Fournier's response was made instantly.  The substance of the excited utterance was corroborated by other evidence, including the ransacked state of the house and Mr. Fournier's observation of a man fleeing from the premises.  Any court faced with this testimony would find the foundation sufficient to support admission of her statements as an excited utterance under Evidence Rule 803(2).  Consequently, petitioner cannot show prejudice on this issue, because the trial court committed no error.

B.    Ineffective Assistance of Trial and Appellate Counsel

Ground 8 of the habeas petition asserts that petitioner's trial counsel was ineffective for failing to object to the admission of Mrs. Fournier's hearsay statements.  As noted, ground 8 is subject to the procedural default defense, because petitioner did not raise this issue on direct appeal.[4] Again, petitioner has not asserted any cause for his failure to preserve this issue properly by seeking a *Ginther* hearing or a remand for that purpose.  Furthermore, he cannot establish prejudice, as any objection would have been utterly futile.  Mrs. Fournier's statements were clearly admissible under Michigan Rule of Evidence 803(2) as excited utterances.

Ground 9 of the habeas petition alleges that petitioner's appellate counsel was ineffective for failing to raise on direct appeal the four issues that petitioner asserted in his post-conviction motion.  The state courts found that this claim was procedurally defaulted.  Under Sixth Circuit authority, however, this finding is an inadequate ground to support a procedural default, as it would have been virtually impossible for petitioner to have raised this issue in his direct appeal. *See Howard*, 405 F.3d at 478-79.  The claim is therefore reviewable on its merits, *de novo*.  *See Maples*, 340 F.3d at 437.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To obtain reversal

---

[4] Unlike the federal courts, the Michigan courts require criminal defendants to raise allegations of ineffective assistance of counsel on direct appeal.  If the grounds for the Sixth Amendment claim are not apparent in the record, the defendant is required to seek an evidentiary hearing after the entry of judgment in the trial court.  If the trial court does not grant an evidentiary hearing, a defendant must move in the Court of Appeals for a remand for purposes of an evidentiary hearing. *See People v. Ginther*, 212 N.W.2d 922, 925 (Mich. 1973).  Failure to seek a *Ginther* hearing ordinarily precludes review of the issue, unless the appellate record contains sufficient detail to support the defendant's claim. *See People v. Sabin*, 620 N.W.2d 19, 21-22(Mich. Ct. App. 2000); *see also People v. Nelson*, No. 270876, 2007 WL 3119392, at * 2 (Mich. Ct. App. Oct. 25, 2007).

of the conviction, a petitioner must prove both that counsel's performance fell below an objective standard of reasonableness, and that a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different.   Under *Strickland*, there is a "strong presumption" that counsel's performance and strategy fell within the wide range of reasonable professional assistance.  466 U.S. at 689.  "A fair assessment of attorney performance requires that every effort be made 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Ballard v. United States*, 400 F.3d 404, 407 (6th Cir. 2005).  Claims of ineffective assistance of appellate counsel are measured under the *Strickland* standard.  *See Evitts v. Lucy*, 469 U.S. 387 (1985).  Tactical choices regarding issues on appeal are properly left to the sound judgment of counsel.  *See United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  To provide effective assistance, counsel need not raise every nonfrivolous claim on direct appeal.  *Ballard*, 400 F.3d at 407; *Williams v. Bagley*, 380 F.3d 932, 970 (6th Cir. 2004).  "'Winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. at 751-52)).  Where appellate counsel is charged with ineffectiveness for failure to raise a particular claim, "it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).  To overcome the presumption of competence of appellate counsel in these circumstances, a petitioner must show that the omitted issues were "clearly stronger" than those counsel chose to assert.  *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)); *see also Minor v. Wilson*, 213 F. App'x 450, 455 (6th Cir. 2007); *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  Consequently, even if the unasserted claim was not frivolous, "the

required prejudice cannot be shown if the claim is found to lack merit." *Burton v. Renico*, 391 F.3d 764, 773 (6th Cir. 2004).

Applying this standard, I find that petitioner cannot establish ineffective assistance of appellate counsel. The four *pro se* issues raised by petitioner in his post-conviction motion were uniformly weak, as demonstrated elsewhere in this report and recommendation. As the Sixth Circuit has noted, "Counsel's failure to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard*, 405 F.3d at 485; *see McCray v. Metrish*, 232 F. App'x 469, 479 (6th Cir. 2007). In this case, there is absolutely no chance that any of these issues would have been meritorious, had they been raised on direct appeal. Petitioner's Confrontation Clause claim, and his related claim of inadmissible hearsay, are both meritless. His assertion that trial counsel was ineffective for raising these issues is likewise unsupportable. Finally, petitioner's contention that he was denied a fair trial by the introduction of "false testimony" by David Fournier is nonsensical. The jury, not the appellate court, determines whether a witness's testimony is true or false. Petitioner has presented no evidence to this court, or to the state appellate courts, supporting any claim of the knowing presentation of perjured testimony by the prosecutor. Petitioner's challenge to the competence of his appointed appellate counsel must therefore fail.

### C.    Improper Polling of the Jury

Ground 10 of the habeas petition asserts that petitioner was denied due process of law by the method utilized to poll the jury. After the jury returned its verdict, the court directed that the jurors be polled, on its own motion. Each juror was asked whether the verdict as read by the foreperson was that juror's verdict, without specifying the count of conviction. Each juror affirmed

agreement with the verdict.  On direct appeal, the Michigan Court of Appeals found that appellate review was waived by the failure to object at trial, limiting review to plain error affecting the defendant's substantial rights.  (Op., 4).  This ground is therefore subject to procedural default analysis.

To overcome the effect of procedural default, petitioner must demonstrate both cause and prejudice.  In this case, he can demonstrate neither.  As noted by the state Court of Appeals, polling of the jury is proper either at the request of a party or upon the court's own motion.  MICH. CT. R. 6.420(C).  State law does not dictate a particular method of polling the jury.  (Op., 4).  In order to provide grounds for habeas corpus relief, the method of polling the jury must have denied petitioner a clearly established federal right, as articulated by the United States Supreme Court.  28 U.S.C. § 2254(d).  Petitioner has not cited any Supreme Court decision that holds that the method chosen to poll the jury in this case abridges any constitutional right.  The Bill of Rights is silent on the issue of polling a jury, and the Supreme Court has never articulated any constitutional requirements under the Due Process Clause.  To the extent that the Court has spoken on the subject, its cases indicate that a jury poll is not constitutionally required.  *See Humphries v. Dist. of Columbia*, 174 U.S. 190, 194 (1899).  The lower federal courts have squarely rejected any constitutional requirement for a jury poll.  *See Cabberiza v. Moore*, 217 F.3d 1329, 1336-37 (11th Cir. 2000) (collecting cases).  Therefore, even ignoring the procedural default, the decision of the Michigan Court of Appeals easily withstands review under the deferential AEDPA standard.

Finally, petitioner cannot overcome the procedural default by showing a miscarriage of justice.  The miscarriage-of-justice exception can only be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence.  *House*, 126 S. Ct.

at 2076.  A habeas petitioner asserting a claim of actual innocence must establish that in light of new

evidence it is more likely than not that no reasonable juror would have found petitioner guilty beyond

a reasonable doubt.  *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  Petitioner has presented

no new evidence bearing on his innocence.

## Conclusion

For the reasons set forth above, I find that each of petitioner's habeas corpus claims

is meritless.  I recommend that the petition be denied on its merits.


Dated:   November 1, 2007                    /s/  Joseph G. Scoville
                                             United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within
ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All
objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file
timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474
U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030
(1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).